**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **DB USA CORE CORPORATION,** | |
| Plaintiff, | C.A. No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| **INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,** | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY JUDGMENT OF
NON-INFRINGEMENT**

Plaintiff DB USA Core Corporation ("Deutsche Bank" or "Plaintiff"), by and through its undersigned attorneys, for its Complaint for Declaratory Judgment against Defendants Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Intellectual Ventures" or "IV"), alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for declaratory judgment of non-infringement arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq. Deutsche Bank seeks declarations that it does not infringe the following five United States patents that IV has affirmatively asserted against Deutsche Bank (collectively, the "Asserted Patents"):

        a.      U.S. Patent No. 7,257,582 (the "'582 Patent");

        b.      U.S. Patent No. 7,949,785 (the "'785 Patent");

        c.      U.S. Patent No. 8,332,844 (the "'844 Patent");

        d.      U.S. Patent No. 8,407,722 (the "'722 Patent"); and

1

e.      U.S. Patent No. 9,043,635 (the "'635 Patent").

2.      Intellectual Ventures is one of the world's largest patent-assertion enterprises. It does not make or sell products. Instead, it acquires patents by the tens of thousands and monetizes them by demanding licenses from operating companies under threat of litigation, and by suing those companies that decline to pay.

3.      Consistent with that business model, IV has accused Deutsche Bank of infringing the Asserted Patents based on Deutsche Bank's ordinary use of widely adopted, third-party open-source software—specifically, the Apache Spark, Kubernetes, Docker, Apache Kafka, and Apache Cassandra platforms. Deutsche Bank neither developed nor distributes any of these platforms; each is created and maintained by independent open-source communities and used by thousands of enterprises worldwide.

4.      IV has asserted that Deutsche Bank uses these open-source platforms in a formal notice letter and an accompanying technical presentation, has demanded that Deutsche Bank pay a multi-million-dollar license fee, has set escalating pricing deadlines to pressure Deutsche Bank into licensing, and has carried out a sustained campaign of litigation against financial-services companies and other enterprises that, like Deutsche Bank, have declined IV's licensing demands. IV's conduct has placed Deutsche Bank under a real, immediate, and substantial threat of suit on the Asserted Patents. This Court has already sustained its declaratory-judgment jurisdiction over a materially identical controversy arising from IV's same licensing campaign. In *Assurant, Inc. v. Intellectual Ventures I LLC*, the court denied IV's motion to dismiss for lack of subject-matter jurisdiction, holding that IV's licensing demands, its technical presentation identifying the accused open-source platforms and the specific patent claims those platforms allegedly practiced, its tiered licensing-program pricing, and its history of enforcing the same patents against similarly situated

2

companies together established a justiciable controversy of sufficient immediacy and reality to support declaratory relief. No. 24-344-GBW (D. Del. Apr. 28, 2026). IV has directed those same affirmative acts at Deutsche Bank, asserting several of the same patents, including the '844 and '785 Patents, and the same justiciable controversy exists here.

5.      Deutsche Bank does not infringe any valid claim of any Asserted Patent. The Asserted Patents claim concepts that bear no resemblance to the modern open-source technologies IV accuses; several were conceived and filed many years before the accused platforms existed, and are directed to fundamentally different architectures. Deutsche Bank brings this action to resolve the controversy IV has created and to obtain the declaratory relief to which it is entitled.

## THE PARTIES

6.      Plaintiff DB USA Core Corporation is a corporation organized under the laws of the State of New Jersey, with its principal place of business in New York, New York. DB USA Core Corporation is part of the Deutsche Bank group, a global provider of banking and financial services.

7.      On information and belief, Defendant Intellectual Ventures I LLC ("IV I") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 14360 SE Eastgate Way, Bellevue, Washington 98007. On information and belief, IV I purports to own all right, title, and interest in the '582 Patent, the '785 Patent, the '722 Patent, and the '635 Patent.

8.      On information and belief, Defendant Intellectual Ventures II LLC ("IV II") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 14360 SE Eastgate Way, Bellevue, Washington 98007. On information and belief, IV II purports to own all right, title, and interest in the '844 Patent.

9.      On information and belief, IV I and IV II are owned, controlled, and/or operated by a common entity or are otherwise under common control, and act in concert as a common enterprise in the acquisition, licensing, and enforcement of patents, including the Asserted Patents.

**JURISDICTION AND VENUE**

10.     This is an action for declaratory judgment of non-infringement of United States patents arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq.

11.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, because this action arises under the patent laws of the United States and the Declaratory Judgment Act.

12.     An actual, substantial, and continuing justiciable controversy exists between Deutsche Bank and IV, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, regarding whether Deutsche Bank infringes the Asserted Patents. As set forth below, IV has affirmatively asserted that Deutsche Bank infringes the Asserted Patents, has demanded that Deutsche Bank take a license under threat of litigation, and has pursued a pattern of litigation against companies similarly situated to Deutsche Bank that have declined IV's licensing demands. Deutsche Bank contends, to the contrary, that it does not infringe any valid claim of any Asserted Patent.

13.     This Court has personal jurisdiction over IV I and IV II because each is organized under the laws of the State of Delaware and is therefore subject to general personal jurisdiction in this State. IV I and IV II have also purposefully availed themselves of the rights and benefits of the laws of Delaware, including by repeatedly invoking this Court's jurisdiction to enforce patents in this District. See, e.g., *Intellectual Ventures I LLC v. Ubiquiti Inc.*, No. 1:23-cv-00865 (D. Del.).

4

On information and belief, IV I and IV II have entered into patent license agreements and directed patent-assertion communications into this District.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c). Each Defendant is subject to personal jurisdiction in this District and therefore resides here for venue purposes under § 1391(c)(2). In addition, a substantial part of the events giving rise to Deutsche Bank's claims occurred in this District, including IV's purposeful direction of its patent-enforcement activities in and to this District.

### THE PATENTS-IN-SUIT

15.     On its face, the '582 Patent, entitled "Load balancing with shared data," states an issue date of August 14, 2007, and names Michael Rothschild as the inventor. The '582 Patent was initially assigned to Corigin Ltd., subsequently to Michael Rothschild, followed by Otic Investments Limited Liability Company, Cufer Asset Ltd. L.L.C., and finally Intellectual Ventures I LLC. On information and belief, IV I purports to own the '582 Patent. A true and correct copy of the '582 Patent is attached as Exhibit 1.

16.     On its face, the '785 Patent, entitled "Secure virtual community network system," states an issue date of May 24, 2011, and names Hasan S. Alkhatib as the inventor. The '785 Patent expired on February 13, 2025. The '785 Patent was initially assigned to IP Dynamics, Inc., subsequently to Inpro Network Facility, LLC, followed by F. Poszat Hu, LLC, and finally to Intellectual Ventures I LLC. On information and belief, IV I purports to own the '785 Patent. A true and correct copy of the '785 Patent is attached as Exhibit 2.

17.     On its face, the '844 Patent, entitled "Root image caching and indexing for block-level distributed application management," states an issue date of December 11, 2012, and names Pradip Kulkarni, Mukul Kumar, Adhir Potdar, Richard Au, and Tung Nguyen as inventors. The

5

'844 Patent was initially assigned to Panta Systems, Inc., subsequently to Venture Lending & Leasing IV, Inc., followed by Emendable Assets Limited Liability Company, then to Xenogenic Development Limited Liability Company, and finally to Intellectual Ventures II LLC. On information and belief, IV II purports to own the '844 Patent. A true and correct copy of the '844 Patent is attached as Exhibit 3.

18.     On its face, the '722 Patent, entitled "Asynchronous messaging using a node specialization architecture in the dynamic routing network," states an issue date of March 26, 2013, and names Timothy Tuttle and Karl E. Rumelhart as inventors. The '722 Patent expired on January 14, 2025. The '722 Patent was initially assigned to Bang Networks, Inc., subsequently to Shaw Parsing LLC, followed by Zarbaña Digital Fund LLC, and finally to Intellectual Ventures I LLC. On information and belief, IV I purports to own the '722 Patent. A true and correct copy of the '722 Patent is attached as Exhibit 4.

19.     On its face, the '635 Patent, entitled "Techniques for upstream failure detection and failure recovery," states an issue date of May 26, 2015, and names Brian Cameros and Wade Albright as inventors. The '635 Patent was initially assigned to Shaw Parsing, LLC, subsequently to Zarbaña Digital Fund LLC, and finally to Intellectual Ventures I LLC. On information and belief, IV I purports to own the '635 Patent. A true and correct copy of the '635 Patent is attached as Exhibit 5.

## BACKGROUND

### A.     Intellectual Ventures' Patent-Assertion Business

20.     Intellectual Ventures is a patent-assertion enterprise that, on information and belief, has acquired tens of thousands of patents from operating companies, research institutions, and inventors. IV does not make, use, or sell any product or service that practices the Asserted Patents.

Instead, IV generates revenue by demanding that operating companies pay license fees for IV's patent portfolio, and by filing patent-infringement suits against those that decline.

21.    On information and belief, IV holds and asserts its patents through a web of affiliated entities—including the IV I and IV II entities named herein, as well as numerous affiliated holding and investment entities such as Invention Investment Fund I, L.P., Invention Investment Fund II, LLC, Callahan Cellular L.L.C., OL Security LLC, Zarbaña Digital Fund LLC, and Cufer Asset Ltd. L.L.C.—all of which are managed, directed, or controlled by Intellectual Ventures Management, LLC and operate as a common enterprise.

22.    IV has pursued a concentrated campaign of patent assertion against the financial-services industry, contending that banks, insurers, and other financial institutions infringe IV patents through their ordinary use of common, third-party open-source software. IV has structured this campaign around revenue-based "licensing program" pricing tiers untethered to the technical scope of any accused functionality, and has used the threat and filing of litigation as leverage to extract licensing payments.

**B.    IV's Assertion of the Asserted Patents Against Deutsche Bank**

23.    IV identified Deutsche Bank as a target of its financial-services licensing campaign and initiated contact with Deutsche Bank concerning a purported need for Deutsche Bank to license IV's patent portfolio.

24.    IV sent Deutsche Bank a formal notice letter dated May 13, 2024, identifying the Asserted Patents and accusing Deutsche Bank of infringing them through Deutsche Bank's use of the Apache Spark, Kubernetes, Docker, Apache Kafka, and Apache Cassandra open-source platforms.

25.     IV supplemented its notice letter with a technical presentation that purported to map each accused open-source platform to one or more claims of the Asserted Patents that IV contends Deutsche Bank infringes, including:

a)  the Apache Spark platform, which IV contends practices one or more claims of the '582 Patent;

b)  the Kubernetes platform, which IV contends practices one or more claims of the '785 Patent;

c)  the Docker platform, which IV contends practices one or more claims of the '844 Patent;

d)  the Apache Kafka platform, which IV contends practices one or more claims of the '722 Patent; and

e)  the Apache Cassandra platform, which IV contends practices one or more claims of the '635 Patent.

26.     IV further presented Deutsche Bank with a licensing valuation and program pricing under which IV demanded that Deutsche Bank pay a multi-million-dollar license fee, derived from Deutsche Bank's revenue rather than from any accused functionality, and warned that IV's pricing would increase if Deutsche Bank did not promptly take a license. IV thereby imposed escalating deadlines designed to pressure Deutsche Bank into licensing the Asserted Patents.

27.     In subsequent communications, IV representatives reiterated IV's demand that Deutsche Bank take a license and signaled that IV would escalate the dispute if Deutsche Bank did not agree to IV's terms within IV's stated window.

**C.      IV's History of Litigation Against Similarly Situated Companies**

28.      IV has a documented history of filing patent-infringement suits against companies that decline its licensing demands, including companies in the financial-services industry that IV accuses of infringement based on the same open-source platforms IV accuses here. IV has filed a total of 144 lawsuits asserting patent claims, including against other financial-services companies such as J.P. Morgan Chase, Capital One, and Comerica, among others.

29.      IV and its affiliates have asserted one or more of the Asserted Patents and closely related patents—directed to the same accused open-source platforms—in numerous prior and pending actions. For example, on information and belief, IV has asserted that the use of the Docker and Kubernetes platforms infringes the '844 and '785 Patents in litigation against major financial institutions and other enterprises.

30.      More recently, IV's assertion campaign concerning these same open-source platforms has produced multiple declaratory-judgment actions filed in this District by financial-services and other companies that, like Deutsche Bank, were accused by IV—including actions brought by Assurant, Inc., The Hartford, The Travelers Indemnity Company, Munich Re, Aldi Inc., and Health Care Service Corporation. IV also continues to file offensive infringement suits asserting these platforms, including against Deere & Company, United Parcel Service, Inc., and UnitedHealth Group Incorporated.

31.      IV's pattern is unmistakable: IV first demands that a target license its portfolio, represents that further litigation is planned against companies that do not license, and then sues those targets that refuse to pay. IV's assertion of the Asserted Patents against Deutsche Bank, viewed against this backdrop, reflects a real and immediate threat of suit.

**D.      An Actual Controversy Exists**

32.      By reason of the foregoing, an actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between Deutsche Bank and IV concerning whether Deutsche Bank infringes the Asserted Patents.

33.      Deutsche Bank contends that it does not infringe, and has not infringed, any valid and enforceable claim of any Asserted Patent. IV contends, to the contrary, that Deutsche Bank infringes the Asserted Patents and must take a license.

34.      Absent a declaration of non-infringement, IV will continue to assert that Deutsche Bank infringes the Asserted Patents and will continue to threaten Deutsche Bank with litigation, thereby causing Deutsche Bank injury for which it has no adequate remedy at law.

## COUNT I
### Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,257,582

35.      Deutsche Bank repeats and realleges paragraphs 1 through 34 as if fully set forth herein.

36.      An actual controversy exists between Deutsche Bank and IV as to whether Deutsche Bank infringes the '582 Patent, which IV contends is practiced by the Apache Spark platform.

37.      Deutsche Bank does not infringe, and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '582 Patent.

38.      The claims of the '582 Patent require, among other things, "logically subdividing records of [a preexisting] input file into a plurality of partitions," "distributing descriptions of all of said partitions to each of a plurality of subtask processors," and processing of unprocessed partitions by the subtask processors "on a first-come/first-served basis." The Apache Spark platform does not satisfy these limitations. Among other things, Apache Spark distributes data and

10

computational tasks to worker nodes rather than "distributing descriptions" of partitions of a preexisting input file, and assigns work to executors through a centralized scheduler rather than having processors take up unprocessed partitions "on a first-come/first-served basis." Deutsche Bank's alleged use of Apache Spark therefore does not practice each and every limitation of any claim of the '582 Patent.

39.     Deutsche Bank is entitled to a declaratory judgment that it has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '582 Patent under 35 U.S.C. § 271.

## COUNT II
### Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,949,785

40.     Deutsche Bank repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41.     An actual controversy exists between Deutsche Bank and IV as to whether Deutsche Bank infringes the '785 Patent, which IV contends is practiced by the Kubernetes platform.

42.     Deutsche Bank does not infringe, and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '785 Patent.

43.     The '785 Patent is directed to a "secure virtual community network system"—that is, a secure virtual network in which a "virtual network manager" registers devices in a virtual network "defined by a domain name," assigns each device a "virtual network address that is unique for each device and not directly routable via a public network," and a "route director" communicates "encapsulated packets" between devices, with the virtual network manager returning, in response to a DNS request, a public network address of the route director together with a private network address and virtual network address of the destination device. The

11

Kubernetes platform does not satisfy these limitations. Kubernetes is a container-orchestration platform; it does not implement the claimed virtual-network-manager and route-director architecture, does not assign devices "virtual network address[es]" of the claimed type that are "not directly routable via a public network" in the manner claimed, and does not perform the claimed DNS-request handling that returns the specific combination of addresses recited in the claims. Deutsche Bank's use of Kubernetes therefore does not practice each and every limitation of any claim of the '785 Patent.

44.    Deutsche Bank is entitled to a declaratory judgment that it has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '785 Patent under 35 U.S.C. § 271.

## COUNT III
### Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,332,844

45.    Deutsche Bank repeats and realleges paragraphs 1 through 44 as if fully set forth herein.

46.    An actual controversy exists between Deutsche Bank and IV as to whether Deutsche Bank infringes the '844 Patent, which IV contends is practiced by the Docker platform.

47.    Deutsche Bank does not infringe, and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '844 Patent.

48.    The claims of the '844 Patent require, among other things, a system for providing data to a plurality of "compute nodes" in which a first storage unit stores "blocks of a root image," a plurality of second storage units store "leaf images" that include "only additional data blocks not previously contained in said root image" and do "not include blocks of said root image that are unchanged," and a "cache" caches "blocks of said root image previously accessed by at least one of said compute nodes." The Docker platform does not satisfy these limitations. The Docker

12

platform does not use "compute nodes" as defined by the '844 Patent; while the '844 Patent teaches that "compute node 100 typically includes at least one processing unit 102 and memory 104," Docker container layers (or "containers") are virtual machines that lack a processor and memory. Additionally, Docker operates on layered file-system images at the file level rather than storing and caching "blocks" of a "root image" at the block level as claimed; Docker's copy-on-write behavior copies entire files rather than only modified data blocks as instructed by the '844 Patent; and Docker containers do not store "leaf images" on "respective second storage units" in the claimed manner. Deutsche Bank's use of Docker therefore does not practice each and every limitation of any claim of the '844 Patent.

49.    Deutsche Bank is entitled to a declaratory judgment that it has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '844 Patent under 35 U.S.C. § 271.

## COUNT IV
### Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,407,722

50.    Deutsche Bank repeats and realleges paragraphs 1 through 49 as if fully set forth herein.

51.    An actual controversy exists between Deutsche Bank and IV as to whether Deutsche Bank infringes the '722 Patent, which IV contends is practiced by the Apache Kafka platform.

52.    Deutsche Bank does not infringe, and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '722 Patent.

53.    The claims of the '722 Patent require, among other things, receiving an "update message" that "identif[ies] a live object" and "contain[s] data for updating a property of the live object," "identifying a category of the update message based on the input source," "determining a

node having a node type to which the update message is to be routed based on a mapping of categories of update messages to node types," and causing a "client" that "has registered for updates of the live object" to "update the property of the live object." The Apache Kafka platform does not satisfy these limitations. Among other things, Kafka is a distributed publish-subscribe event-streaming platform in which producers publish records to topics and partitions and consumers read those records; records in Kafka topics cannot be changed once published, and Kafka messages cannot perform operations on a receiving device. As such, Kafka does not route "update message[s]" that identify a "live object" and contain data for "updating a property" of that object, does not employ the claimed "node specialization architecture" mapping "categories" of messages to "node types," and does not cause a registered client device to "update the property of the[] live object" as claimed. Deutsche Bank's use of Apache Kafka therefore does not practice each and every limitation of any claim of the '722 Patent.

54. Deutsche Bank is entitled to a declaratory judgment that it has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '722 Patent under 35 U.S.C. § 271.

**COUNT V**
**Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,043,635**

55. Deutsche Bank repeats and realleges paragraphs 1 through 54 as if fully set forth herein.

56. An actual controversy exists between Deutsche Bank and IV as to whether Deutsche Bank infringes the '635 Patent, which IV contends is practiced by the Apache Cassandra platform.

57. Deutsche Bank does not infringe, and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '635 Patent.

58.     The claims of the '635 Patent require, among other things, instructions to "identify, at a client, a first data center among a plurality of data centers that is closest to the client," to "receive, at the client, an application from the first data center," and to "determine, at the client, that a failure occurred between [a] first content provider and the first data center" based on the non-receipt of a recurring "status message," whereupon "the application is configured to automatically connect, at the client, to a second data center" to receive content. The '635 Patent describes "data centers" as physical locations, and teaches that clients may connect to the "data center" nearest to them by physical proximity: "For example, if client **102** is closest to San Francisco, a S.F. data center **104**-**1** may be chosen to service the request." The Apache Cassandra platform does not satisfy these limitations. Among other things, Cassandra is a masterless, peer-to-peer distributed database in which nodes detect failures among themselves using a gossip protocol; it does not have the claimed "client"/"content provider"/"data center" architecture, does not identify a "closest" data center and receive "an application" from it as claimed, and does not perform client-side failure detection based on missed recurring "status message[s]" from a "content provider" followed by automatic client connection to a "second data center" as claimed. Deutsche Bank's use of Apache Cassandra therefore does not practice each and every limitation of any claim of the '635 Patent.

59.     Deutsche Bank is entitled to a declaratory judgment that it has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '635 Patent under 35 U.S.C. § 271.

## PRAYER FOR RELIEF

WHEREFORE, Deutsche Bank respectfully requests that this Court enter judgment in its favor and against IV as follows:

A.    A declaration that Deutsche Bank has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '582, '785, '844, '722, and '635 Patents under 35 U.S.C. § 271;

B.    A permanent injunction restraining and enjoining IV and its officers, directors, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with any of them, from alleging, representing, or otherwise asserting that Deutsche Bank infringes any claim of the '582, '785, '844, '722, or '635 Patents, and from instituting or threatening any action for infringement of those patents against Deutsche Bank or its customers, suppliers, or users of the accused technologies;

C.    A declaration that this is an exceptional case, and an award to Deutsche Bank of its reasonable attorneys' fees under 35 U.S.C. § 285;

D.    An award to Deutsche Bank of its costs and expenses incurred in this action; and

E.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Deutsche Bank demands a trial by jury on all issues so triable.

16

OF COUNSEL (*pro hac vice* forthcoming):

Bijal V. Vakil
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
bijal.vakil@skadden.com


William K. Wray Jr.
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston St.
Boston, MA 02116
(617) 573-4889
william.wray@skadden.com

DATED: July 2, 2026

<u>*/s/ Joseph O. Larkin*</u>
Joseph O. Larkin (ID No. 4883)
Jessica R. Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-3000
joseph.larkin@skadden.com
jessica.kunz@skadden.com


*Attorneys for Plaintiff*
*DB USA Core Corporation*

17